Nicholson, C. J.,
delivered the opinion of the Court.
On the 25th of July, 1867, M. R. Murrell was •elected Secretary and Treasurer of the Cincinnati, Cumberland Gap & Charleston Railroad Company, and executed bond in the penalty of $200,000, with most, if not all, of the defendants, except Patton & Co. and McCalla, as sureties for the faithful discharge of his duties. Pie held the office until 1870, when his successor was elected and qualified. The bill is filed to make him and his sureties responsible for a defalcation as such Secretary and Treasurer, amounting to $2,097, ■and also for the amount of $1,931, which came into his hands as financial agent of J. W. Patton & Co., the contractors for the building, to which complainants claim to be entitled in equity.
It is not alleged in the bill, whether upon the ■election of Murrell as Secretary and Treasurer for the term of one year, it was specified in tlm bond that he was elected for one year; but assuming that there was no such specification, it is insisted that “ the said bond, in law and under the operation of the statute, bound the sureties not only for a full legal term of office, which was one year, but until a successor was ■duly elected and qualified.
The answer of the defendant “ admits that all of them, except R. M. Barton and the testator of J. C. Hodges, signed the bond as surety of said Murrell as Secretary and Treasurer of the R. R. Co. for the term ■of one year.” This was at the election on the 25th ■of July, 1867. They state that at the end of the *717 year he was re-elected, and they are informed that he was not required to give another bond. They insist that they only undertook for the faithful conduct 'of their principal for one year. The cause was heard on-bill and answer, and the Chancellor held that the sureties were responsible for any defalcation occurring at any time from the election in July, 1867, to the election of his successor in 1870. This presents the first error in the decree complained of.
As the cause was heard on bill and answer, we are-to assume that the statement in the answer, that the defendants signed the bond as securities for one year,, is true, and upon that assumption we are to determine the extent of their liability.
The Railroad Company was chartered in 1853, and the provisions of the charter constituted a contract between the State and the corporation, which must control our decision, unless the charter has been since amended with the consent of the corporation. ' By the-charter of the Company, there is no provision for any such officer as Secretary and Treasurer, but the Board of Directors was left to .create and appoint such officers as in their discretion they might deem proper. They determined to have such an officer, and to require him to enter-into bond in the penalty of $200,000, payable to the Company. This officer was, therefore, merely an agent of the Company, and was in no sense a public officer. The stipulations in the bond constituted the law which governed and fixed the liabilities of the securities. If .one of those stipulations was, that the officer was elected for one year, then the *718 securities were only responsible for bis fidelity during that time. But it is argued that this bond was executed in 1867, at which time by the law in regard to private corporations a failure to elect officers at the proper time does not dissolve the corporation, but those in office hold until the election and qualification of their successors — Code, sec. 148 — and also, when no term of office is fixed by the charter or by-laws of a private corporation, such officer holds for one year, and until the qualification of his successor. It is insisted that we are to presume that the sureties entered into the contract in view of those provisions of the Code, and that they are therefore bound thereby.
To concede to this argument, we must either assume that these provisions of the Code, which were enacted for the first time by the Code, were intended by the Legislature to be retroactive, or that the Railroad Company had accepted these provisions as amendments to their charter. Retroactive laws are contrary to public policy, and hence statutes are never so construed, unless the language forces such a construction. There is nothing in ,the language of these provisions of the Code which requires us to construe it otherwise than prospectively. Nor is it alleged in the bill that the Railroad Company had ever accepted these provisions as amendments to their charter. We are therefore of opinion that the Chancellor erred in holding that the securities were liable for any defalcation beyond the first year after the execution of the bond. Of course this holding does not deny the liability of Mur-rell for all defalcations while he held the office.
*719 The next error in the decree of the Chancellor •complained of, is, that not only Murrell but his sureties are responsible for the defalcation of Murrell in failing to account for about $1,931,-which he received as the financial agent of J. W. Patton & Co., upon the sale of State Bonds, paid to the engineer of the Company as the agent of J. ~W. Patton & Co. It appears by the contract between the Company and J. ~W. Patton & Co., the contractor for building the road, that if they failed to complete the work in a specified time, the Company was to turn over the further building of the road to McCalla, the engineer of the Company, who was to prosecute the work as the agent of J. W. Patton & Co. Upon the failure of J. W. Patton & Co. the work was turned over to the engineer, who proceeded, as the agent of J. W. Patton & Co., to build the road, and in the progress of the work a number of State bonds were delivered ■ to him in payment, and for which at their par value the Company had credit with J. W. Patton & Co. These bonds were disposed of for currency by Murrell, as the financial agent of J. W. Patton & Co., and according to the allegation of the bill, he failed to account to J. W.. Patton & Co. for $1,931, part of the currency so received for the bonds. Complainants based their equity to recover this $1,931 upon a stipulation in their contract with J. W. Patton & Co., by which he was bound to go on to the completion of the road, and that the Company have a right to appropriate this amount towards, the completion of the work.
It is clear that, upon the holding already an- *720 nouneed, the sepurities could not be held liable for this defalcation, unless it should appear that it occurred during the first year after Murrell’s election. But in the next place, they cannot be responsible, for the reason that Murrell was acting as the financial agent of J. W. Patton & Co. when this defalcation occurred, and not as the Secretary and Treasurer of the R. R. Company. The fact that the road was being built by the engineer of the Company, cannot make Murrell the agent of the Company in their transactions, for the reason that the engineer was prosecuting the work as the agent of and for J. W. Patton & Co.
The only question then is, whether complainants have a right to hold Murrell responsible for the alleged defalcation of §1,931. It is said that by a decree in the case of the State against this Railroad Co., rendered at Nashville on the 8th of April, 1871, all the property and franchises of the Company were ordered to be sold to satisfy prior claims of the State, and that in pursuance of said decree the said road and all the property and franchises of the Company were sold, whereby it is insisted the Company was extinguished, and therefore that they have no right to recover the fund in controversy. ' But the effect of that decree was not to extinguish the rights of the Company to go on and close up their unsettled business.
Besides, in the case at Nashville, there is an express reservation in behalf of the Company, to go on and collect the amounts claimed in this suit, and to appropriate the same to the payment of the debts of *721 the Company. The legal effect of their reservation is, to authorize complainants to collect the funds claimed and to hold the same as trustee for the benefit of their creditors. ' If there should be a decree against Mur-rell, his payment thereof would discharge him from any further liability, either to J. W. Patton & Co. or to the creditors of the Company. He is, therefore, in no position to resist a decree on this ground. Without- further inquiry as to the equity set up by complainants to the fund in controversy, as the decree at Nashville has authorized the collection by complainants for a special purpose, and as J. W. Patton & Co. are parties to the suit and have set up no claim to the funds, We are of opinion that jhere was no error in the Chancellor’s decree, so far as it held that Murrell would be responsible for the defalcation occurring as financial agent of J. W. Patton & Co. But we hold, that in taking the account to ascertain the amount of this defalcation, Murrell may take proof and show whether J. W. Patton & Co. are justly indebted to him for services as their agent, and if any such indebtedness is found, he will be entitled to have the same allowed as a set-off. But no such allowance will be made to him for extra services as Secretary and Treasurer, as an off-sett to any amount that may be found against him, on taking the account to ascertain the amount of his defalcation as Secretary and Treasurer. So far as the securities- are concerned, they will be held responsible for any such defalcation as may be found to have occurred within one year from the 25th of July, 1867.
*722 With these modifications the decree is affirmed and the cause remanded. The costs will be paid by Mur-rell, to be allowed as a set-off pro tanto against any amount the complainants may recover on final decree. The question of fact, whether Barton, and Hodge’s testator, executed the bond, will be referred for proof below.